

# Beck|Redden LLP

1221 McKinney Street, Suite 4500 | Houston, Texas 77010
Phone 713.951.3700 | Fax 713.951.3720
www.beckredden.com

```
_/_ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
         COUNSEL/PARTIES OF RECORD

         JAN 20 2015

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY:_____ DEPUTY
```

14 CV 2013

Murray Fogler
Phone 713.951.6235
mfogler@beckredden.com

January 13, 2015

RE:    In Re: Bailey Financing Litigation; MDL Docket No. 2609

---

*Via First Class Mail to all*
Everett McKinley Dirksen
Clerk of the Court, Northern District of Illinois, Eastern Division
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

David J. Bradley
Clerk of Court, Southern District of Texas, Houston Division
P. O. Box 61010
Houston, TX 77208

Clerk of the Court, District of Nevada, Las Vegas Division
United States Courthouse
333 S. Las Vegas Blvd.
Las Vegas, NV 89101

Timothy M. McCloskey
Blake E. Rizzo
Carrigan, McCloskey, & Roberson, L.L.P.
945 Heights Blvd.
Houston, Texas 77008

Kenneth C. Johnston
Brian W. Clark
Catherine E. (Kate) Gaither
Kane Russell Coleman & Logan, PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201

January 13, 2015
Page 2


Jason S. Vanacour
Kevin P. Perkins
Vanacour Schuler Zarin PLLC
14675 Midway Road, Suite 100
Addison, TX 75001

William Harrison Junell
440 Louisiana Street, Suite 2100,
Houston, Texas 77002

Michael A. Weinberg
Richard G. Douglass
Amanda M.H. Wolfman
Novack and Macy, LLP
100 N. Riverside Plaza
Chicago, Illinois 60606

Robert J. Bobb
PSB Partners, LLC
120 North LaSalle St., Suite 3200
Chicago, IL 60606

Bernard Paul Edelman
Frank A. Edelman, Ltd.
77 West Washington Street
Suite 1514
Chicago, IL 60607

Robert Ronald Tepper
111 West Washington Street
Suite 1900
Chicago, IL 60602

F. Thomas Edwards
Sarah T. Bassett
Holley, Driggs, Walch, Puzy & Thompson
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

Bailey Peavy Bailey PLLC
440 Louisiana Street, Suite 2100,
Houston, Texas 77002

January 13, 2015
Page 3


To Whom It May Concern:

Enclosed is Bailey Respondents' Brief in Opposition to Motion for Transfer of Related Actions to the Northern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Docket No. 21).


Very truly yours,

*/s/ Murray Fogler*

Murray Fogler

MF/lv

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

IN RE:                                          §
                                                §
                                                §   MDL DOCKET NO. 2609
BAILEY FINANCING LITIGATION                     §
                                                §

## BAILEY RESPONDENTS' BRIEF IN OPPOSITION TO MOTION FOR TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

F. Kenneth Bailey, Jr., F. Kenneth Bailey, Jr. PC, Kenneth Camp Bailey, William Harrison Junell and Bailey Peavy Bailey PLLC (collectively, "Respondents") submit this opposition to Bighorn's motion to transfer three cases to one court for centralized MDL pretrial proceedings. Bighorn's motion should be denied as there are only three pending cases, the pending cases have widely disparate procedural postures, and there is little commonality between the cases. Centralization is therefore inappropriate. 28 U.S.C. § 1407(a).

Where, as is the case here, a motion to transfer for coordination or consolidated pretrial proceedings concerns only three cases, the party seeking consolidation bears a strong burden to demonstrate that common questions of fact are so complex as to warrant transfer. *In re Weatherford Int'l Ltd.*, 804 F. Supp. 2d 1370, 1371 (J.P.M.L. 2011); *In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010); *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969). Bighorn has failed to meet this burden. The limited common factual questions that may exist are not sufficiently complex as to warrant consolidation of such a small number of cases, and transfer would not serve the convenience of the parties or of witnesses, nor would it promote the "just and efficient conduct" of the matters. 28 U.S.C. § 1407(a).

Alternatively, in the event that the Panel finds that centralization and transfer is appropriate, the Southern District of Texas would be the appropriate forum. That district has the most advanced case, which is set for trial in 4 months, and a judge (Hon. Kenneth Hoyt) who has presided over numerous issues, including temporary restraining orders, preliminary injunctions, and discovery disputes for over a year. It is also the most convenient forum for the litigation, where most of the witnesses and documents are located. Thus, Respondents respectfully request that the Panel transfer the actions to the Southern District of Texas.

## FACTUAL BACKGROUND

F. Kenneth Bailey, Jr. ("Bailey") is a Houston-based attorney practicing mass tort litigation across the country for over 40 years. Bailey and his firm represent several states in pharmaceutical litigation across the United States. Currently, Bailey, through his law firm Bailey Peavy Bailey, PLLC ("BPB") is handling several thousand Transvaginal Mesh cases. Bailey's firm needed litigation financing for the Transvaginal Mesh cases and Bailey also wanted to obtain a personal loan to pay off some existing expenses. In the course of exploring potential funding opportunities, Bailey was introduced to Robert Entler, the President of Bighorn Capital, Inc. ("Bighorn"). Entler represented that Bighorn could provide financing for the expenses of the Transvaginal Mesh cases and arrange a personal loan for Bailey.

On August 22, 2013, Bailey's professional corporation, Ken Bailey, P.C. (the "PC"), and Bailey executed a Financing Commitment with Bighorn. On that same date, BPB executed a second Financing Commitment with Bighorn. Pursuant to the terms of the Financing Commitment with the PC, the First Loan was to be in the amount of $1,000,000 with a term of 6 months from the closing date and the Second Loan was to be in the amount of $10,000,000 with a term of 1 year from the closing date.

The Financing Commitment required Bighorn to fund the loans within 30 days or it became null and void unless mutually extended by both parties in writing. The two loans never funded within the 30 day period and the Financing Commitment was never extended by the parties either verbally or in writing as required by the Financing Commitment.

Although neither of the loans contemplated by the Financing Commitment was consummated, Entler introduced the PC to PSB Partners, LLC ("PSB"). On or about September 18, 2013, the PC executed a Loan and Security Agreement with PSB. The Agreement provided that PSB would make a term loan to the PC in the principal amount of two million dollars with a maturity date of December 13, 2013. Prior to entering into the Loan and Security Agreement, Bailey had never heard of PSB. Bailey has no affiliation with PSB whatsoever.

On or about September 20, 2013, the PC executed a Loan Disbursement Statement which stated that the Loan from PSB would be disbursed as follows: (a) $25,000 to PSB as a Lender's Reimbursement Fee, (b) $47,000 to PSB for Lender's Legal/Fees/Costs, and (c) $1,928,000 to the PC (the "Loan Proceeds"). Unfortunately, PSB never disbursed the Loan Proceeds to the PC. Instead, Entler directed that PSB disburse the Loan Proceeds to B&B Opportunity Fund, LLC ("B&B"). Although Bailey has no affiliation whatsoever with B&B, Entler told PSB that B&B was Bailey's company in order to deceive it in directing the Loan Proceeds to B&B.

Discovery in the Southern District of Texas case has shown that B&B is nothing more than a sham company created and controlled by Entler to defraud Bailey. B&B was incorporated on September 9, 2013 in the state of Delaware just 14 days prior to the funding of the PSB loan. B&B lists its business address as 250 Pilot Road, Suite 160, Las Vegas, Nevada 89119, the same address of Bighorn and the rest of the Entler entities. Bailey never signed an operating agreement for B&B, and he is not a member of the limited liability company. Further, in the

3

Southern District of Texas case, Bailey has requested that Entler produce the operating agreement for B&B, but Entler has failed to do so.

On September 23, 2013, the same day the Loan Proceeds were funded, Entler, as the "Owner/Key Individual" of B&B, opened a checking account at Wells Fargo for B&B wherein Entler is the only signatory on the account. Then, in order to perpetrate the fraud, Entler used B&B's account to steal the Loan Proceeds. The Wells Fargo banking records show that the Loan Proceeds of $1,928,000.00 were transferred into the B&B account on September 23, 2013.

Immediately thereafter, $750,000 was transferred to other business entities controlled and/or owned by Entler. Blue Acquisition Member received $600,000, Durango Gravel, LLC received $100,000 and Ville Stock Acquisition received $50,000. Although these entities are affiliated with Entler, they appear to have forfeited their corporate status with the state of Nevada several years ago. The following day, September 24, 2013, $1,000,000 was sent to Bailey. Thereafter, between September 27, 2013 and October 8, 2013, the remaining Loan Proceeds were distributed to Durango Gravel, LLC ($127,925.00) and Scott Morgan ($50,000.00), an associate of Entler's and the B&B account was left with a zero balance.

Entler's use of the Loan Proceeds for his own personal benefit was not only unauthorized, but also in direct contravention to his statements made to Bailey prior to the litigation. Via email dated September 12, 2013, Mr. Entler advised Bailey that the PSB loan would give him "net proceeds of $1,000,000 either today or tomorrow and the remainder of the monies will be used to finish the large facility." As shown above, the proceeds were not used to finish the larger facility but were immediately transferred to other entities owned by Entler. Moreover, Bailey has learned that there was no other loan or facility available.

## FEDERAL ACTIONS IDENTIFIED BY BIGHORN

In order to conceal his theft of approximately $1,000,000 from Bailey, Entler has engaged in litigation subterfuge in an attempt to delay judgment day by filing four separate lawsuits in four different states. In this matter, Bighorn has identified three cases for consolidation. The fourth case, not at issue here, was filed in Delaware State Court by Entler's entity, B&B.

Although Bighorn and Respondents agreed to consolidate two cases in the Southern District of Texas, Bighorn and its alter egos subsequently chose to initiate two other federal cases when they filed suit in Illinois and Nevada. Thus, the Panel is presented with the curious situation in which the moving party originally filed suit in the Southern District of Texas, agreed to consolidate its case with the existing federal court case, and then created the multi-district character of the litigation of which it now complains by filing other non-related federal cases in other districts.

As summarized below, the federal actions identified by Bighorn are at varying stages of litigation, do not involve the same parties, and the common questions of fact, if any, that do exist are not so complex as to warrant a transfer.

A.  *F. Kenneth Bailey, Jr. and F. Kenneth Bailey, Jr. PC v. Robert Entler, Bighorn Capital, Inc., Dominick Sarno and B&B Opportunity Fund, LLC*, Civil Action No. 13-cv-3521, in the United States District Court for the Southern District of Texas (Lead Case) ("Bailey I")

—*consolidated with*—

*Bighorn Capital, Inc. v. Bailey Peavy Bailey, PLLC, F. Kenneth Bailey, Jr., Kenneth Camp Bailey and William Harrison Junell*, Civil Action No. 14-cv-03070, in the United States District Court for the Southern District of Texas ("Bailey II")

The essence of Plaintiffs' claims in Bailey I is that Entler orchestrated a scheme with his co-conspirators, including Bighorn, to steal almost $1 million from the Plaintiffs. Plaintiffs further allege that Entler carried out his scheme by creating B&B and using it as a sham entity to process loan proceeds that were supposed to be directed to the PC. Bailey has never signed an operating agreement for B&B on behalf of himself, the PC, or any of Bailey's related entities. B&B is a stranger to Bailey. In discovery, Plaintiffs have requested Entler to produce the operating agreement for B&B, but Entler has failed to do so. Nevertheless, Entler directed the loan proceeds meant for the PC to B&B. Then, B&B transferred the money that was intended for the PC to other entities controlled by Entler.

As it stands now, Bailey I is, in summary, an action for Civil Theft/Conversion of $1,000,000 by Entler and Bighorn and a Declaratory Judgment action declaring the Financing Commitment executed by Bailey and the PC is null and void.

Bailey I was instituted by Bailey and the PC on November 18, 2013 in Texas State Court. On that same day, the State Court entered a Temporary Restraining Order (the "TRO") against Bighorn and Entler. On December 2, 2013, Entler and Bighorn removed the case to the United States District Court for the Southern District of Texas and assigned to the Honorable Kenneth Hoyt. Bailey I has been pending for over a year, involved extensive discovery, and Judge Hoyt has presided over a number of disputes and issued numerous rulings, including the following in chronological order:

- December 3, 2013, Judge Hoyt entered an Order extending the TRO and setting a preliminary injunction hearing for December 16, 2013;

- December 9, 2013, Judge Hoyt conducted a hearing regarding Bighorn's motion for reconsideration of the TRO;

- December 16, 2013, the parties entered into an agreed extension of the TRO until March 17, 2014;

- January 16, 2014, the Court held a scheduling conference;

- January 22, 2014, the Court entered a Scheduling Order setting trial for November 3, 2014;

- January 29, 2014, Plaintiff served its First Set of Requests for Production of Documents to Robert Entler and Bighorn Capital, Inc.;

- March 6, 2014, Defendants served their First Requests for Production of Documents to F. Kenneth Bailey, Jr. and F. Kenneth Bailey, Jr., P.C.;

- March 6, 2014, the Court conducted a hearing on Plaintiffs' application for a preliminary injunction and subsequently entered an agreed Order extending the TRO until April 24, 2014;

- April 24, 2014, the parties entered into a Stipulated Preliminary Injunction;

- April 30, 2014, Defendants served their First Set of Interrogatories to Plaintiffs;

- April 30, 2014, Defendants served their Second Request for Production of Documents to Plaintiffs;

- May 1, 2014, Plaintiffs issued subpoenas to Monroe Capital, Monroe Credit, PSB Partners and Citigroup;

- May 1, 2014, Defendants served their First Amended Set of Interrogatories to Plaintiffs;

- May 1, 2014, Defendants served their Third Request for Production of Documents to Plaintiffs;

- May 7, 2014, Plaintiffs served their First Set of Interrogatories to Defendants;

- June 18, 2014, Plaintiffs issued subpoenas to the Prime Group, Inc.;

- July 16, 2014, Defendants filed a Counterclaim;

- August 26, 2014, Defendants issued Subpoenas to PSB Partners, LLC, and Council Settlement Group, Inc.;

- August 28, 2014, Defendants issued Subpoenas to Pardue Settlement Solutions, Inc. and Michelle Pardue;

- September 17, 2014, the Court entered a scheduling order granting the parties joint motion for continuance of trial and setting trial for May 4, 2015;

- On September 24, 2014, Defendants issued a Subpoena to PRMCO Inc.;

- September 26, 2014, B&B Opportunity Fund filed its 12(b) motion to dismiss;

- September 30, 2014, Bailey Peavy Bailey filed a motion to quash the PRMCO subpoena;

- October 16, 2014, the Plaintiffs filed their response to B&B's motion to dismiss;

- October 26, 2014, after a hearing, the Court entered an order quashing the PRMCO subpoena; and

- November 24, 2014, Court entered an order consolidating Case No. 14-3070 with Lead Case 13-3521.

Bailey I is so far along in discovery, and has such a disparate procedural posture from the other cases, that centralization would not serve the convenience of the parties and promote the just and efficient conduct of the litigation. For example, in connection with the discovery outlined above, the parties have produced over 4000 pages of documents and the scheduling order requires the parties mediate prior to February 20, 2015. Likewise, the case is now on its **second** trial setting for May 4, 2015. In each of the other cases, no answers have been filed, no scheduling orders have been entered, and no discovery has been served.

Like Bailey I, Bailey II also involves the validity of a Financing Commitment executed by BPB. Thus, in both cases, the Court will have to determine if the Financing Commitments are valid and enforceable and then determine Bighorn's and Bailey's rights, obligations and/or liabilities under the Financing Commitments.

8

B.   *Bighorn Capital, Inc. v. PSB Partners, LLC*, Case No. 14-cv-9045 in the
United States District Court for the Northern District of Illinois ("PSB
Case")

Unlike Bailey I and II above, Bailey, his firms and partners, are not parties to the PSB

Case.   Rather, in the PSB Case, Bighorn sued PSB on November 11, 2014 alleging that PSB

tortuously interfered with Bighorn's efforts to obtain financing from Monroe Capital.   Thus, the

relevant issue in the PSB Case is whether PSB interfered with Monroe's agreement to lend such

money after the Financing Commitments were executed.   The rights, obligations and liabilities

arising from the Financing Commitments at issue in Bailey I and II are simply not at issue in the

PSB Case.   Rather, discovery in this tort case will focus on PSB's actions and its dealings with

Monroe—two issues not relevant in Bailey I and Bailey II, which are contractual disputes.

Respondents have no dispute with PSB and there is simply no reason to force

Respondents into litigation in which they have no interest.   Moreover, Bighorn's reliance on the

forum selection clause contained in the loan documents between Bailey and PSB is misplaced

given that no dispute exists between the parties to those loan documents.   The forum selection

clause is irrelevant.   And Bighorn is not a party to the loan documents between Bailey and PSB,

so it cannot invoke the forum selection clause contained therein.

C.   *Blue Acquisition Member, LLC v. Bailey Peavy Bailey, PLLC*, Civil Action No.
14-cv-02013-GMN-NJK, in the United States District Court of Nevada ("Blue
Case")

In this case, Blue Acquisition Member, LLC ("Blue"), one of Entler's alter egos, by way

of an alleged assignment from 1410 Houston Tower LLC, ("1410") claims that BPB breached

B&B's operating agreement by failing to comply with BPB's alleged oral promise to make a

$15,000,000 contribution to B&B.   The contribution was allegedly for B&B to pursue real estate

acquisitions.

9

The Blue Case is completely manufactured by Entler. Respondents have never executed an operating agreement on behalf of B&B. They cannot breach an agreement they never executed. Entler has, to date, failed to produce an executed copy of B&B's operating agreement. It appears that B&B was wholly created by Entler to perpetrate his fraud against Respondents. Further, there are no written documents or communications that support Entler's assertion that BPB made an oral agreement to make a $15,000,000 contribution to B&B. It defies common sense to believe that a law firm would decide to pursue speculative real estate deals—much less agreeing to do so without any writing or contract evidencing the alleged agreement.

Blue is seeking money damages in the amount of $740,000 as a result of BPB's alleged breach. Blue has asserted causes of action for "Breach of the Agreement" and Promissory and Equitable Estoppel. Thus, the only relevant issues in the Blue Case are whether an agreement existed between B&B and BPB, and whether BPB breached any such agreement by refusing to make a $15,000,000 contribution to B&B. Discovery will be centered on whether there was any oral agreement between B&B and BPB. The validity/invalidity of the Financing Commitments and Bighorn's efforts to obtain financing, which are the subject of Bailey I and II, are not determinative of those issues. There is no factual overlap between the Blue Case and Bailey I and II.

Moreover, the contemplated real estate transaction at issue in the Blue Case was the development of real estate in Houston, Texas, and BPB's principle office is in the Southern District of Texas. The Blue Case could have been filed in the Southern District of Texas like Bailey I and Bailey II, but Entler chose to file suit in his home state of Nevada. Further proliferating the litigation, Entler has also brought suit in Delaware State Court for the same claims, which will proceed separate and apart from the federal actions.

## ARGUMENT & AUTHORITIES

### I.   CENTRALIZATION IS NOT WARRANTED.

Not all litigation that involves multiple cases warrants consolidation and transfer to one court for pre-trial proceedings.  The cases must involve one or more common questions of fact, and centralization must promote the just and efficient conduct of such actions.  28 U.S.C. § 1407(a).  The cases Bighorn seeks to consolidate fail to meet those standards.

Unlike most cases that are centralized and transferred into multi-district litigation, which involve common issues of fact that affect large number of parties that are similarly situated, this litigation involves only three cases, comprising of a limited number of parties, and disparate facts give rise to each action.  These cases lack all of the essential characteristics of cases that should be centralized under Section 1407.

The Panel's orders from the December 2014 Hearing Session illustrate the type of cases that are appropriate for centralization.[1]  It is proper to centralize cases involving the adequacy of warning labels on an allegedly defective drug taken by a large number of people, *see In re Xarelto (Rivaraoxaban) Prods. Liab. Litig.*, MDL No. 2592 (J.P.M.L. Dec. 12, 2014), or cases involving a data security breach at a national retail chain that could have compromised the security of 56 million payment cards, *see In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2583 (J.P.M.L. Dec. 11, 2014).  Centralization is not warranted in litigation "involving only two actions," and a limited number of parties, because this would not "serve the convenience of the parties and promote the just and efficient conduct of the litigation." *In re Robert Reedom Litigation*, MDL No. 2585 (J.P.M.L. Dec. 12, 2014).  These actions fall in the latter category.  For the reasons set forth below, the Panel should deny centralization.

---

[1] *See* http://www.jpml.uscourts.gov/panel-orders.

**A.      The Actions Do Not Share Common Questions of Fact.**

In response to a straightforward breach of contract dispute between Bighorn and Bailey and the PC, Bighorn and its related entities have filed three other federal lawsuits. One alleges a scheme to interfere with a nonexistent loan in Illinois (the "PSB Case"), while another complains of a breach of an oral promise to do real estate deals in Texas (the "Blue Case"). These lawsuits are sideshows, distracting from the main issue in dispute—whether the Financing Commitments entered into by the parties are valid and enforceable, and if so, the rights and obligations of the parties under those agreements. Despite its best efforts to manufacture various lawsuits to create a need for centralization, Bighorn's request should be denied because the cases do not arise out of common nucleus of operative facts and involve vastly different legal theories.

The threshold requirement for centralization is that the pending actions must involve "one or more common questions of fact." 28 U.S.C. § 1407(a). These actions fail to meet that test.

The Bailey I and II actions pending in the Southern District of Texas involve the question of whether the Financing Commitments are valid and enforceable. As with any contract dispute, the factual issues relevant to such a question are the terms of the agreement, the parties' negotiations and representations in entering the agreements, and whether the parties' conduct constituted a breach of the agreements. These are primarily legal issues. Facts outside of the narrow universe of issues relating to the Financing Commitments are not necessary for the adjudication of the dispute. Herr, D., *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 5.4 (2008) ("Where the issues in a case are primarily legal in nature, even though some fact issues may exist, the Panel is nearly certain to conclude that transfer is not appropriate.").

On the other hand, the PSB Case in the Northern District of Illinois deals with a completely different set of circumstances. This lawsuit involves a claim by Bighorn against PSB, an entity located in Illinois, for tortious interference with contractual relations. The Bailey parties are not a party to this lawsuit. The factual issues relevant to this lawsuit are whether PSB interfered with Bighorn's negotiations with another Illinois entity, Monroe Capital, in connection with a loan commitment. While Bailey I and II in the Southern District of Texas involve the facts giving rise to the execution of the Financing Commitments, the PSB Case deals with an entirely different set of facts arising *after* the Financing Commitments were already executed by parties in another state. They are simply unrelated.

Bighorn argues that these actions are similar because the validity of the Financing Commitment determines whether there was a contract with which PSB tortiously interfered. Mot. at 12. However, centralization is not proper when "actions share common issues of law" but "share few, if any, questions of fact." *In re American Home Prods. Corp "Released Value" Claims Litig.*, 448 F. Supp. 276, 278 (J.P.M.L. 1978). To the extent that the actions may share common legal issues is insufficient to support centralization. *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009) ("Merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization.").

The Blue Case in the District of Nevada involves another set of factual circumstances that is unrelated to the other two lawsuits. In this lawsuit, Blue, an entity controlled by Entler, contends that the BPB law firm and its principals breached the unsigned operating agreement of B&B and oral promises to fund real estate deals. Those alleged oral agreements are completely different agreements than the Financing Commitments at issue in Bailey I and II. The question

13

of whether there was an alleged promise to fund a real estate deal in Houston, Texas, does not share any common factual questions with the issue of whether the Financing Commitments are enforceable contracts. Each contract stands on its own. Nor does the Blue Case have any relationship with the PSB Case in the Northern District of Illinois, which does not concern a breach of contract but tort claims.

Even assuming for the sake of argument that these lawsuits share factual similarities, as Bighorn contends, that is not enough to warrant centralization. "Even where common issues abound," however, the Panel must "consider the role and importance of common issues to the litigation as a whole." Herr, D., *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 5.4 (2008). If common issues do not at least play a central role, centralization should not be ordered. *Id.* (citing *In re Eli Lilly & Co. Oraflex Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984). The common issues, if any, in these lawsuits do not play a central role, so centralization should be denied.

**B.     The Small Number of Actions Weighs Against Centralization.**

Only three actions are at issue here. In such circumstances with a limited number of actions, Bighorn must not only show that there are common questions of fact, but that these common factual questions are sufficiently complex that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407. *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).

In *Scotch Whiskey*, the Panel refused to order Section 1407 proceedings where only two actions were involved. *Id.* This determination resulted from the conclusion that the just and efficient conduct of the two actions would not be furthered by the requested transfer. *Id.* In reaching its holding, the Panel held that, where only a minimal number of actions are involved,

14

the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses. *Id.*

Following the teachings of *Scotch Whiskey*, the Panel has repeatedly held that the moving party bears a heavier burden demonstrating the need for centralization where only a limited number of actions are involved. *See, e.g., In re Transocean Ltd. Sec. Litig. II*, 753 F. Supp. 2d 1373 (J.P.M.L 2010).

Bighorn has not met its heavy burden. It has failed to establish that the actions are so complex and discovery so time-consuming that centralization is necessary. In fact, the proceedings in Bailey I show the exact opposite. Discovery has been progressing for over a year and the action is set for trial in May 2015. The fact that discovery is almost completed after a year, and trial is set to occur in a few months, shows that this action is not too complex or time-consuming to warrant centralization. Bighorn has failed to identify any factual issues that are so complex and time-consuming to justify centralization. Bailey I and II involve run-of the-mill contract disputes that federal courts routinely handle. The same is true for the separate and distinct oral contracts at issue in the Blue Case, and the tort claims that are the subject of the PSB Case. There is nothing extraordinary or complex about these cases to justify centralization.

**C.      The Southern District of Texas Action Precludes Centralization.**

The late-stage of the Southern District of Texas action precludes centralization. It was commenced over one year ago, and considerable activity has already occurred in that action. The parties have exchanged written discovery, and produced over 4,000 pages of documents. The court has also made numerous pre-trial rulings on temporary injunctions and discovery

disputes. The parties have further been ordered to conduct mediation prior to February 20, 2015. Notably, the case is now on its second trial setting, which is set to occur on May 4, 2015.

In contrast, in each of the other cases, no answers have been filed, no scheduling orders have been entered, and no discovery has been served.

Thus, inclusion of Bailey I and II in centralized pretrial proceedings would only delay the termination of that action without producing any overriding benefit to the litigation as a whole. *In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 68 F.R.D. 502, 505 (J.P.M.L. 1975); *In re Insulin Mfg. Antitrust Litig.*, 487 F. Supp. 1359, 1361 (J.P.M.L. 1980). The imminent trial setting in Bailey I and II should not be postponed by consolidating it with two other actions that have just begun. This would frustrate the purpose of centralization, which is the just and efficient conduct of the litigation. 28 U.S.C. § 1407(a).

### D.    There Is No Need For Centralization.

Centralization is not necessary as there are suitable alternatives to Section 1407 transfer available to the parties in the litigation to promote judicial efficiency. In deciding whether judicial economy will be promoted by transfer, the possibility of cooperation among the judges to whom the constituent actions are assigned must be evaluated as an alternative. *In re Credit Card Payment Protection Plan Mktg. & Sales Practices Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010); *In re Iowa Beef Packers, Inc. Litig.*, 309 F. Supp. 1259, 1260 (J.P.M.L. 1970).

Here, cooperation between the parties and the Courts can easily minimize the possibilities of duplicative discovery or inconsistent pre-trial rulings in these relatively straight-forward actions. Even in the absence of agreement by the parties, any party could seek to make discovery completed in one action applicable to the other actions. *See In re Penitentiary Postal Procedure Litig.*, 465 F. Supp. 1293, 1294 (J.P.M.L. 1979). Notices for any future depositions

could be filed in all actions, thereby making the depositions applicable in all actions. *See In re Oklahoma Insurance Holding Company Act Litig.*, 464 F. Supp. 961, 965-66 (J.P.M.L. 1979). Additionally, consultation and cooperation between the district courts, if viewed appropriate by those courts, coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings. *See In re Raymond Lee Organization Inc. Securities Litigation*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978).

The parties can also seek a stay of the PSB Case and Blue Case, which are in their infancy, pending the outcome of Bailey I and II, where discovery is almost completed and the case is less than four months from trial. *In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978).

## II.     ALTERNATIVELY, THE ACTIONS SHOULD BE TRANSFERRED TO THE SOUTHEN DISTRICT OF TEXAS.

In the event that the Panel finds that centralization is appropriate, which it is not, for the reasons stated above, Respondents submit that the Southern District of Texas is the proper district in which to consolidate these actions. The factors on which the Panel decides where to transfer multi-district litigation uniformly support transfer of these actions to the Southern District of Texas.

### A.     The Most Significant Volume of Common Discovery Sources Are Located in the Southern District of Texas.

Because it would serve the interests of the witnesses and parties, the location of key documents and witnesses is an important factor in determining the district in which coordinated proceedings should occur. Accordingly, the Panel often transfers to the district where one or more the parties have their headquarters and significant operations. *E.g., In re Toyota*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) ("Toyota maintains its United States corporate

17

headquarters within this district, and relevant documents and witnesses are likely located there.").

Respondents' headquarters and operations are based in the Southern District of Texas. This is where all of their witnesses reside. It is also the place where the Financing Commitments were negotiated and entered into, and Entler travelled frequently to Houston in the course of these negotiations, showing that it is a convenient forum. Further, Houston, Texas is the location of the alleged real estate transaction that is at issue in the Blue Case. Thus, the witnesses and documents relating to that deal are located in Houston. Thus, Houston, Texas is the center of gravity for two out of the three cases at issue. Bighorn points to the PSB Case as a reason for transfer to the Northern District of Illinois but Respondents are a stranger to that case and do not have any witnesses or documents locates there. The PSB case should not the tail that wags the dog. The main issue in dispute in this litigation is the enforceability of the Financing Commitments and that case is centered in the Southern District of Texas.

**B.     The Furthest Progressed Action is in the Southern District of Texas.**

The Panel often considers progress in the actions under consideration as a factor in deciding where to transfer those actions under Section 1407, and particularly considers the familiarity that a particular judge already has with the factual issues in the actions under consideration for transfer. *E.g., In re Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d 1369, 1372 (J.P.M.L. 2010) ("[W]e conclude that the District of Kansas would be the best forum. The first-filed Brawner action is pending in that district.").

The Southern District of Texas is the first-filed action, and it has progressed further than any of the other actions. None of the other actions have progressed to any meaningful extent. Accordingly, no judge in any of the other actions has developed any familiarity with any of the

legal or factual issues that will ultimately arise in these actions, while Judge Hoyt has already presided over these proceedings for more than a year and made extensive rulings. Judge Hoyt would be the appropriate judge to preside over the consolidated actions for pre-trial purposes.

### C.       The Southern District is Not Overburdened and Has Qualified Judges.

The Panel takes particular care to select a judge for an MDL assignment who has the time, ability, and experience to handle the anticipated pretrial proceedings efficiently. *See, e.g., In re Toyota*, 704 F. Supp. at 1382. As this Panel will discover, more than one judge in the Southern District of Texas has the qualifications and experience to handle this MDL proceeding. Indeed, the Southern District of Texas is currently handling three MDLs. The published statistics (available at the U.S. Courts' website http://www.uscourts.gov/fcmstat/index.html) and the Panel's own investigation will reveal that Southern District of Texas judges, including Judge Hoyt, have ample time on their dockets to devote to the varied legal and factual issues posed by these actions.

### D.       There is No Good Reason to Select the Northern District of Illinois.

Transfer of the Related Actions to the Northern District of Illinois would not be convenient for the parties and witnesses, and would not lead to the just and efficient conduct of the actions. The majority of the key witnesses are not residents of the Northern District of Illinois. Indeed, none of Respondents reside or work in Illinois. Further, the vast majority of documents and data pertinent to the actions are, by and large, not maintained in the Northern District of Illinois.

In an effort to justify the Northern District of Illinois as an appropriate forum, Bighorn claims that Respondents and PSB have specifically agreed to litigate in the Northern District of Illinois through a forum-selection clause. Mot. at 18. However, the agreements entered into

between Respondents and PSB are not the subject of any litigation, and no party is seeking to enforce or invalidate those agreements in any of the pending actions. Those agreements have nothing to do with actions at issue. In contrast, the Financing Commitments—the actual agreements that are being litigated in Bailey I and II—have choice of law provisions mandating application of Texas law.

Bighorn contends that the Northern District of Illinois is well-equipped to handle MDLs with over fifteen pending in the district versus three in the Southern District of Texas. But Bighorn's argument cuts both ways. The large number of MDL proceedings in the Northern District shows that it is too congested and overburdened to handle these actions.

## CONCLUSION

For the reasons above, the Panel should deny Bighorn's request to transfer and consolidate the pending actions. Alternatively, the Panel should deny Bighorn's request to transfer the Northern District of Illinois, and in the event that the Panel finds that centralization is appropriate, the Panel should transfer the actions to the Southern District of Texas.

Date:   January 13, 2015                 Respectfully Submitted,

                                         **CARRIGAN, McCLOSKEY & ROBERSON, L.L.P.**

                                         By:___/s/ Timothy M. McCloskey_____
                                                 Timothy M. McCloskey – Attorney in Charge
                                                 State Bar No. 13417650
                                                 S.D. Tex. No. 11343
                                                 tmccloskey@cmrllp.com
                                                 Blake E. Rizzo
                                                 State Bar No.  24034073
                                                 brizzo@cmrllp.com
                                                 945 Heights Blvd.
                                                 Houston, Texas 77008
                                                 (713) 868-5581
                                                 (713) 868-1275 (fax)

                                                 Tim Johnson
                                                 State Bar No. 10797650
                                                 tjohnson@lockelord.com
                                                 2800 JPMorgan Chase Tower
                                                 600 Travis
                                                 Houston, Texas  77002
                                                 (713) 226-1200
                                                 (713) 223-3717

                                                 **ATTORNEYS FOR F. KENNETH BAILEY, JR., F. KENNETH BAILEY, JR PC, KENNETH CAMP BAILEY, and WILLIAM HARRISON JUNELL**


                                         **BECK REDDEN LLP**

                                         By:___/s/Murray Fogler_____
                                                 Murray Fogler – Attorney in Charge
                                                 Texas State Bar No. 07207300
                                                 S.D. Texas Bar No. 2003
                                                 mfogler@beckredden.com
                                                 1221 McKinney St., Suite 4500
                                                 Houston, TX 77010
                                                 Phone 713.951.6235
                                                 Fax 713.951.3720

                                         **ATTORNEYS FOR BAILEY PEAVY BAILEY, PLLC**

                                                         21

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Bailey Financing Litigation | ) | MDL No. 2609 |
| | ) | |
| | ) | |

## Proof of Service

I hereby certify that a copy of the foregoing Bailey Respondents' Brief in Opposition to Motion for Transfer of Related Actions to the Northern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pre-Trial Proceedings and this Certificate of Service was served via First Class Mail on January 13, 2015, to the following:

1.  Everett McKinley Dirksen
    Clerk of the Court, Northern District of Illinois, Eastern Division
    United States Courthouse
    219 South Dearborn Street
    Chicago, IL 60604

2.  David J. Bradley
    Clerk of Court, Southern District of Texas, Houston Division
    P. O. Box 61010
    Houston, TX 77208

3.  Clerk of the Court, District of Nevada, Las Vegas Division
    United States Courthouse
    333 S. Las Vegas Blvd.
    Las Vegas, NV 89101

4.  Timothy M. McCloskey
    Blake E. Rizzo
    Carrigan, McCloskey, & Roberson, L.L.P.
    945 Heights Blvd.
    Houston, Texas 77008
    *Counsel for Plaintiff/Consolidated Defendants* F. *Kenneth Bailey, Jr.,* F. *Kenneth Bailey, Jr. PC, and Consolidated Defendant Kenneth Camp Bailey,* S.D. Texas, Houston Division, 4:13-cv-03521

5.  Kenneth C. Johnston
    Brian W. Clark
    Catherine E. (Kate) Gaither
    Kane Russell Coleman & Logan, PC
    3700 Thanksgiving Tower
    1601 Elm Street

Dallas, Texas 75201
kjohnston@krcl.com
bclark@krcl.com
kgaither@krcl.com
*Counsel for Defendants Robert Entler and Dominick Sarno and Defendant/Counter-
Plaintiff Bighorn Capital, Inc.* S.D. Texas, Houston Division, 4:13-cv-03521

6. Jason S. Vanacour
   Kevin P. Perkins
   Vanacour Schuler Zarin PLLC
   14675 Midway Road, Suite 100
   Addison, TX 75001
   *Counsel for Defendant B&B Opportunity Fund,* UC, S.D. Texas, Houston Division, 4:13-
   cv-03521

7. William Harrison Junell
   440 Louisiana Street, Suite 2100,
   Houston, Texas 77002
   *Consolidated Defendant,* S.D. Texas, Houston Division, 4:13-cv-03521

8. Michael A. Weinberg
   Richard G. Douglass
   Amanda M.H. Wolfman
   Novack and Macy, LLP
   100 N. Riverside Plaza
   Chicago, Illinois 60606
   maw@novackmacey.com
   rdouglass@novackmacey.com
   awolfman@novackmacey.com
   *Counsel for Plaintiff, Bighorn Capital, Inc.,* N.D. Illinois, Eastern Division, 1:14-cv-
   09045

9. Robert J. Bobb
   PSB Partners, LLC
   120 North LaSalle St., Suite 3200
   Chicago, IL 60606
   *Defendant,* N.D. Illinois, Eastern Division, 1:14-cv-09045

10. Bernard Paul Edelman
    Frank A. Edelman, Ltd.
    77 West Washington Street
    Suite 1514
    Chicago, IL 60607
    *and*
    Robert Ronald Tepper
    111 West Washington Street

Suite 1900
Chicago, IL 60602
roberttepper@yahoo.com
*Counsel for Defendant, PSB Partners, LLC*, N.D. Illinois, Eastern Division, 1:14-cv-09045

11. F. Thomas Edwards
Sarah T. Bassett
Holley, Driggs, Walch, Puzy & Thompson
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Counsel for Plaintiff, Blue Acquisition Member, LLC*, D. Nevada, Las Vegas Division, 2:14-cv-02013

12. Bailey Peavy Bailey PLLC
440 Louisiana Street, Suite 2100,
Houston, Texas 77002.
*Defendant,* D. Nevada, Las Vegas Division, 2:14-cv-02013

Dated: January 13, 2015            Respectfully Submitted,

                                   By: */s/ Murray J. Fogler*
                                        Murray J. Fogler
                                        State Bar No. 07207300
                                        mfogler@beckredden.com
                                        BECK REDDEN LLP
                                        1221 McKinney Street, Suite 4500
                                        Houston, Texas  77010


                                        *Attorneys for Defendant Bailey Peavy Bailey PLLC,*